*379 BERNSTEIN, J.
(dissenting). Under the governmental tort liability act, MCL 691.1401 et seq., a governmental employee is immune from tort liability unless his or her conduct amounts “to gross negligence that is the proximate cause of the injury or damage.” MCL 691.1407(2)(c). It is only the question of causation that is now before us. This Court has previously interpreted “the proximate cause” to mean the “the one most immediate, efficient, and direct cause of the injury or damage. . ..” Robinson v Detroit, 462 Mich 439, 462; 613 NW2d 307 (2000).
I believe that the lifeguard’s failure to rescue the deceased was the one most immediate, efficient, and direct cause of death. Although an autopsy indicated that the deceased died by drowning, there is no evidence as to how this came to pass. Defendant William J. Harman attempts to use the unknown in his favor, arguing that whatever caused the deceased to remain submerged was the proximate cause of his death. However, there is no indication that the deceased intentionally stayed at the bottom of the pool or suffered any sort of cataclysmic health event that would have kept him there.
Contrary to the prevailing image of drowning victims to display obvious signs of distress, drowning can happen both quickly and quietly.[1]
*380 Because drowning can occur quickly and quietly, it is not surprising that lifeguards, distracted from keeping an eye on the water by other assigned duties, have failed to spot drowning persons in time to rescue them.... It is clear, therefore, that swimming facilities must be staffed adequately to ensure effective and continuous patron surveillance, and that lifeguards should be given no other task that would distract them from this work.[2]
It is undisputed here that Harman, the sole lifeguard on duty, was distracted from his duties; he was not in his designated position, which would have given him the best vantage point of the pool, and he ignored several calls for help from the student who found the deceased. Pointing to an unknown health event as the one most immediate, efficient, and direct cause of death places on plaintiff the unenviable burden of proving a negative, because there is no indication that any such health event occurred.
In the absence of any evidence that would support such a finding, it seems clear that it is the lifeguard’s failure to ensure effective and continuous surveillance of the students that was the one most immediate, efficient, and direct cause of death. Because I would hold that the lifeguard’s conduct was “the proximate cause” of death, I would find that the exception to governmental immunity articulated in MCL 691.1407(2) is applicable and I would deny leave to appeal.

 “Drowning persons usually struggle to keep their mouth above the surface of the water in order to breath. Struggling to stay afloat and possibly suffocating, they are rarely able to call out or wave their arms.... These characteristics of drowning... emphasize the need for lifeguards as a source for continuous surveillance and immediate action.” Christine M. Branche & Steven Stewart (eds), Centers for Disease Control and Prevention, Lifeguard Effectiveness: A Report of the Working Group (2001), available at <http://www.cdc.gov/ HomeandRecreationalSafety/pubs/LifeguardReport-A.pdf> (accessed June 10, 2015) [http://perma.cc/C9VL-Z4CP].

 Id. The United States Lifesaving Association (USLA) also supports this recommendation: “ ‘Lifeguards assigned to supervise an aquatic area shall not be subject to duties that would distract or intrude their attention from proper observation of persons in the waterfront area, or that prevent immediate assistance to persons in distress in the water.’ ” Id. (citation omitted).